# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **DOCKET NO. 07-30026** |
| **VERSUS** | * | **JUDGE JAMES** |
| **JAMAAL J. BONNETT** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress Evidence and Statements filed by defendant, Jamaal Bonnett.  [doc. # 16]. For reasons stated below, it is recommended that the motion be **DENIED.**

### BACKGROUND

On July 18, 2007, the Monroe Safe Streets Task Force and the Morehouse Parish Sheriff's Office executed a search warrant at 517 Collins Avenue, Bastrop, Louisiana. (Complaint, Attach. A).  During the search, the officers discovered Jamaal Bonnett in a bedroom with various quantities of crack cocaine separated into little bags and a pill bottle.  *Id*.  Bonnett admitted to the officers that the crack cocaine belonged to him.  *Id*.  A complaint and one count indictment against Bonnett for possession with intent to distribute crack cocaine ensued.

On October 19, 2007, Bonnett filed the instant motion to suppress.  He contends that probable cause did not exist to search the residence at 517 Collins Avenue because officers "knowingly included inaccurate statements" in their oath submitted in support of the search warrant.  Defendant further argues that the information contained in the oath was stale at the time the warrant was issued and when it was executed.  He further contends that the oath inadequately

described the residence at 517 Collins Avenue.  The government filed a memorandum in opposition to the motion to suppress, and an evidentiary hearing was held on November 20, 2007.

## LAW AND ANALYSIS

An affidavit submitted in support of a search warrant is presumptively valid.  *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978).  Nonetheless, evidence obtained pursuant to a search warrant is properly suppressed when the defendant demonstrates by a preponderance of the evidence that "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause."  *See, United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006), *cert. denied*, ____ U.S. ____, 127 S.Ct. 1313 (2007) (citation omitted); *Franks, supra*.

In the case *sub judice*, the oath or affidavit was sworn on July 12, 2007, by Agent Jeffrey Philley of the Morehouse Parish Sheriff's Department before Judge Brandon of the Bastrop City Court.  (Gov.'t Exh. 1).  The affidavit states in pertinent part that

> [o]n July 10, 2007, agents were patrolling the area of Collins Avenue and observed a white Toyota Four Runner occupied by four white males stop in front of 517 Collins Avenue.  Your affiant then parked adjacent from the residence and observed a white male exit the vehicle and make contact with a black male standing in the yard.  Affiant observed the two shake hands and then the black male walked inside the residence and came back out and affiant then observed a transaction and the white male then put the item in his mouth.  The black male then walked back into the residence.  Agents then stopped the vehicle for a traffic violation and made contact with the white male, who was identified as Chris Musgrove, and recovered two pieces of suspected crack cocaine from his mouth. Agents also received a statement from another passenger who advised they were asked to take Musgrove to the residence so he could purchase the crack cocaine. Agents have also made several undercover purchases in the past from this

2

residence.

*Id*.

At the November 20, 2007, hearing, Agent Philley's testimony was materially consistent with the statements in his affidavit.  He testified that he drove past an oncoming Toyota Four Runner that had briefly stopped in front of 517 Collins Avenue.  Philley passed the house on his right and turned left into a driveway a few houses down.[1]  He observed the Four Runner proceed down the street, turn around, return, and stop just past 517 Collins Avenue.  One white male exited the vehicle and met a black male either at the front door or at the fence in front of 517 Collins Avenue.[2]  The black male went into the house, returned and effected an exchange with the white male  – later determined to be Chris Musgrove.[3]  As Musgrove returned to the car, Philley observed him put something in his mouth.  The Four Runner drove off and was stopped by law enforcement officers a few hundred yards away.  Officers recovered crack cocaine from Musgrove's mouth.  After the transaction, Philley did not see where the black male went, and he was not apprehended.[4]

At the hearing, the defense presented testimony from three of the Four Runner's four occupants  (Chris Musgrove, Seneca Yates, and Kyle Crenshaw)[5] and from a man who was apparently staying at 517 Collins Avenue at the time of the transaction (Malcolm Jenkins).  Chris

---

[1]  The affidavit stated that Philley parked adjacent to the residence.  (Gov.'t Exh. 1).

[2]  Philley was unable to identify the black male.

[3]  Philley did not see money exchange hands.

[4]  Philley stated in the affidavit that the black male walked back into the residence after the transaction.

[5]  The driver did not testify.

Musgrove said that he stepped out of the Four Runner and bought crack cocaine from a man standing on the edge of the street.  He never saw the seller enter the house.  He did say, however, that they had been directed to go down the street and return before the transaction occurred.  Musgrove acknowledged that on the day in question, he had been drinking "bad" all day long.  He also admitted on cross-examination that he was a consistent user of crack cocaine.[6]

Malcolm Jenkins testified that he observed the drug transaction at issue from the yard of what subsequent questioning determined to be 517 Collins Avenue.[7]  He said that he saw Ricky Williams direct the Four Runner down the street, and then pick up something from the ditch across the street.  Williams then stopped the four-runner when it returned.  Jenkins stated that he did not see Williams go into a house.  After the Four Runner was stopped by the police, Jenkins observed Williams run down the street in the opposite direction.  Jenkins admitted that he is currently in prison for a probation revocation related to cocaine possession.

Seneca Yates testified that they dropped Chris Musgrove off, and picked him up after the Four Runner went down the street and turned around.  Yates did not recall the residence where the car stopped, yet he conspicuously remembered that the yard was not fenced.  Yates initially testified that he did not see anyone walking down the street, and did not see Musgrove talk to anyone.  Upon cross-examination, however, he stated exactly the opposite.  Yates admitted that he was not really paying attention to what was going on around him at the time.  He did not see the person who met with Musgrove go inside a house.  At times, Yates's testimony was all but incoherent and unintelligible.

---

[6]  Musgrove is currently serving a sentence for possession of crack cocaine.

[7]  Jenkins was feeding the dogs at the time in question.

4

The last witness to testify was Kyle Crenshaw.  He stated that the driver of the car, his cousin, told him that they were going to go by "this house."  When they pulled up to the house, they were told by a black man to make the block.[8]  When they came back, Musgrove exited the car, made the exchange, and then got back in the car.  Crenshaw stated that the house was fenced, and there were pit bulls in the yard.  Crenshaw did not see where the black man went while they were making the block.  Crenshaw indicated that the man was about 20 feet from the corner of the fence, away from the front of the house at 517 Collins Avenue.[9]  Crenshaw admitted that at the time of the transaction he was talking to his cousin, and was not paying much attention to what was going on around him.

The critical portion of the affidavit at issue is the section that states that after the initial contact, the black male walked into the residence, returned, and then conducted the transaction. The only witness besides Agent Philley to have observed the black male between the initial meeting and the actual transaction was Malcolm Jenkins.[10]  However, Jenkins was apparently staying at 517 Collins Avenue, and thus had a potential motive to protect any occupants of the house – including himself.[11]  To the extent that the undersigned is called upon to favor the testimony of either Philley or Jenkins, the undersigned credits the testimony of the former.

The supporting affidavit does not specify whether the transaction occurred in a yard or on

---

[8]  Crenshaw did not see the man at first, but when he looked up, he was standing near the street.

[9]  In other words, the seller was not in front of the house.

[10]  The three other witnesses drove down the street in the car before returning.

[11]  It is not improbable that Jenkins may have been involved in the transaction.

5

the street, and thus, the transaction locale is not directly relevant to the present inquiry save to the extent that proximity is indicative of whether the seller retrieved drugs from the residence prior to the sale.  However, the undersigned observes that defendant's theory of a pedestrian seller who kept his stash in a ditch on the side of the road is seemingly incompatible with Philley's testimony that he drove past the Four Runner and pulled into a driveway a few houses down from 517 Collins Avenue and across the street.  If the seller were outside and operating from the street, his suspicions certainly would have been aroused by a car driven by a white male in a predominantly black neighborhood that pulled into a nearby driveway.  Additionally, Philley testified that approximately two weeks earlier, he had made a purchase from an individual on the same street who had also retreated into the residence at 517 Collins Avenue prior to the transaction.

In sum, the undersigned finds that defendant has not established by a preponderance of the evidence that the statements in the sworn affidavit were deliberately false or made with a reckless disregard for the truth.  There is no evidence to suggest any deliberate falsification of the statements; any inconsistencies between the affidavit and Agent Philley's testimony were fairly minor, and regardless, the remaining portions of the affidavit suffice to support a finding of probable cause.  *Mays, supra*.

Defendant next argues that the information contained in the oath was stale at the time the warrant was issued and when it was executed.  Staleness is determined on the facts of each case.  *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).  The courts will not mechanically count the lapsed days or weeks between the facts set forth in the affidavit and the issuance of the warrant.  *Id*.  Probable cause depends upon averred facts which are closely related in time to the

issuance of the warrant.  *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993).  Time becomes less significant, however, when the affidavit recites protracted or continuous activity. *Id*.

Here, the affidavit alleged several drug transactions associated with 517 Collins Avenue, with the most recent event occurring only two days before the warrant was signed.  (Gov.'t Exh. 1).  In *United States v. Ruff*, the Fifth Circuit found that an almost two month interval between the last observation of a drug laboratory by an informant and the ensuing search warrant did not render the warrant stale.  *United States v. Ruff*, 984 F.2d 635 (5th Cir. 1993).  Likewise, an ongoing drug trafficking scheme that lasted until two weeks before the warrant was issued was held not to be stale.  *Webster, supra*.  The undersigned finds that the information which supported the search warrant in this case was not stale due to the ongoing drug activity at 517 Collins Avenue, and the relatively short period between the last observed activity and the issuance of the warrant.

Defendant also contends that the six day delay between the issuance of the search warrant and its execution was unreasonable.  The federal rules permit warrants to be executed up to ten days after issuance.  Fed.R.Crim.P. 41(e).[12]  However, ten days provides the outside limit, and the warrant must be executed within a reasonable time.  *United States v. Harper*, 450 F.2d 1032, 1044 (5th Cir. 1971).  A delay may be reasonable when it is caused by "distance, traffic conditions, weather, inability to locate the person or premises to be searched, personal safety, etc."  *United States v. Bradley*, 428 F.2d 1013, 1016, n7 (5th Cir. 1970).  Even if a delay proves

---

[12]  Although there is no indication that Rule 41 governs search warrants issued by city court judges, its parameters are instructive.

unreasonable, the evidence will be excluded only if the delay resulted in legal prejudice to the defendant.  *Id*.

In this case, Agent Philley testified that the reason for the six day delay was so that law enforcement officers could ascertain the number of persons who resided at 517 Collins Avenue, and then determine the personnel required to safely execute the warrant.  There is no evidence that the officers completed the safety surveillance any earlier than the execution date or that they were otherwise dilatory in their efforts.  Thus, the six day delay was not unreasonable.[13]

Finally, defendant argues that the affidavit inadequately described the residence at 517 Collins Avenue.  However, search warrants do not require technical averments of elaborate specificity.  *United States v. Napoli*, 530 F.2d 1198, 1201 (5th Cir. 1976).  The description need only ensure that "an officer with a search warrant can, with reasonable effort, ascertain and identify the place intended."  *Id*. (citation omitted).  Here, there is no evidence that the intended residence was not readily identifiable by the street address.  Moreover, the actual search warrant contained a detailed description of the residence from which an officer could unequivocally identify the intended target.  (Gov.'t Exh. 2).

For the above-stated reasons,

IT IS RECOMMENDED that defendant's Motion to Suppress Evidence and Statements [doc. # 16] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten**

---

[13]  In any event, defendant has not alleged or established any resulting legal prejudice.

**(10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of November, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE